IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                        Case Nos.:   4:13cr6/RH/CAS
                                                        4:14cv163/RH/CAS
ADAM ARNOLD,

        Defendant.
_____

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant's amended motion to vacate, set

aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 32).  The Government

filed a response and an affidavit in opposition (docs. 35, 37, 39) and Defendant filed a

reply (doc. 41).  The case was referred to the undersigned for the issuance of all

preliminary orders and any recommendations to the district court regarding dispositive

matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P.

72(b).  The court held an evidentiary hearing in this case on December 3, 2014.

Defendant submitted a post-hearing memorandum of law (doc. 47), to which the

Government responded (doc. 48).  After a careful review of the record and the

arguments presented, it is the opinion of the undersigned that the § 2255 motion should

be granted as to Defendant's claim that counsel was constitutionally ineffective for his

failure to file, or consult with Defendant concerning, an appeal, and that the remaining

claims should be dismissed without prejudice pending the outcome of this appeal, if any.

## PROCEDURAL BACKGROUND

On January 9, 2013, Defendant was charged in a two-count indictment with receipt and distribution of child pornography ("Count One") and possession of child pornography ("Count Two") (doc. 1).  He pleaded guilty to Count One of the indictment on March 21, 2013, pursuant to a written plea agreement and statement of facts (docs. 13–15).[1]  According to the statement of facts,[2] state law enforcement executed a search warrant on Defendant's home after an internet service provider supplied information that a Tallahassee, Florida, subscriber was sending and/or receiving child pornography images.[3]  After Defendant was read his <u>Miranda</u> rights, he admitted that he knew that the officers were there because he had downloaded child pornography.  He explained that he was sexually aroused by children between infancy and fourteen years old, but that he had not acted on these urges.  Forensic examination revealed approximately 6000 images of child pornography within a "hidden" directory on Defendant's computer, including children under the age of 12 engaged in sexual intercourse.  A separate directory labeled "friends" contained non-pornographic images of what appeared to be

---

[1]The Government agreed to move to dismiss Count Two at sentencing.

[2]Defendant agreed at his rearraignment that everything in the statement of facts was true (doc. 27 at 7–8).

[3]Defendant was identified as an information technology specialist at a local elementary school.

local children to whom Defendant may have been attracted.[4]  Defendant also admitted

having received and posted images of child pornography on a Russian-based website

and provided investigators with his username and password for this site (doc. 13 at

1–3).

The Presentence Investigation Report ("PSR") calculated Defendant's total

offense level as 37 (doc. 19,  PSR ¶¶ 18–31).  This included a base offense level of 22,

two two-level increases because the offense conduct included prepubescent minors and

it was facilitated by the use of a computer, a four level increase due to Defendant's

possession of material portraying sadistic or masochistic conduct, and a five level

adjustment as a result of Defendant's "trade" of the images and videos.  Defendant also

received a three-level downward adjustment for acceptance of responsibility.

Defendant's criminal history category was I.  The applicable advisory guidelines range

of 210 to 262 months became 210 to 240 months due to the statutorily authorized

maximum sentence (PSR ¶¶ 67, 68).  Multiple pages of victim impact statements were

appended to the PSR (*see* doc. 19-1 at 1–49), and the defense filed letters in mitigation

in Defendant's behalf, including from his parents and one of his daughters (doc. 20).

At sentencing, the court sua sponte questioned the application of the five level

increase for the "trade" of the images, which the Government ultimately conceded was

not applicable to Defendant's case (doc. 28 at 3–6).  The advisory guideline range was

reduced to 121 to 151 months, accordingly.  After hearing argument from the parties,

---

[4]Although not stated in the statement of facts, the PSR reflects that one of the images was an erotic image of Defendant's own partially-clad, sleeping daughter, who was approximately 15 years old at the time (doc. 19, PSR ¶ 9).

the court imposed a below-guidelines sentence of 108 months imprisonment, followed by a life term of supervised release (*id.* at 23–28).  The court advised Defendant of his appellate rights (*id.* at 32–33), and the clerk entered judgment on June 4, 2013 (docs. 22, 23).

Nothing further was filed until, on October 28, 2013, the clerk received Defendant's "Motion to Extend the Sentence Date to Take a Direct Appeal" (doc. 25).  In so moving, Defendant stated "[t]he rationale is that the issues to be raised would be properly raised on direct appeal rather than on a subsequent motion pursuant to § 2255" (*id.*).  On November 3, 2013, the district court denied Defendant's motion (doc. 29).  On March 24, 2014, Defendant filed his motion to vacate pursuant to 28 U.S.C. § 2255 (doc. 30).  Defendant amended his motion pursuant to court order, and it is this amended motion that is currently before the court (docs. 31, 32).  In his motion, Defendant raises three claims relating to alleged deficiencies in the indictment, and a claim that counsel was constitutionally ineffective because he did not appeal. The Government opposes the motion in its entirety.

**LEGAL ANALYSIS**

General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral

attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8

(11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of

constitutional rights and for that narrow compass of other injury that could not have

been raised in direct appeal and would, if condoned, result in a complete miscarriage of

justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations

omitted).

 Ineffective assistance of counsel claims are generally not cognizable on direct

appeal and are properly raised by a § 2255 motion regardless of whether they could

have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503

(2003); *see also* United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to

prevail on a constitutional claim of ineffective assistance of counsel, a defendant must

demonstrate both that counsel's performance was below an objective and reasonable

professional norm and that he was prejudiced by this inadequacy.  Strickland v.

Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000);

Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying Strickland,

the court may dispose of an ineffective assistance claim if a defendant fails to carry his

burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States,

720 F.3d 1316, 1326 (11th Cir. 2013).

 In determining whether counsel's conduct was deficient, this court must, with

much deference, consider "whether counsel's assistance was reasonable considering

all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of

Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's

performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); see also Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct).  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious

as to deprive the defendant of a fair trial, a trial whose result is reliable."  Lockhart, 506

U.S. at 369 (quoting Strickland, 466 U.S. at 687).

　　　To establish ineffective assistance, Defendant must provide factual support for

his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401,

1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are

insufficient to satisfy the Strickland test.  See Boyd v. Comm'r, Ala. Dep't of Corr., 697

F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807

(11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Stano v.

Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63,

74 (1977)).

　　　Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between."  Chandler, 218 F.3d at 1313.  This is because the

test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the

circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v.

Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).

Ground Four–Failure to File an Appeal[5]

　　　Defendant's claim and applicable law

---

[5]The court addresses this claim first, because granting relief on this claim moots
Defendant's other claims.

In Defendant's fourth ground for relief, Defendant contends that counsel was constitutionally ineffective because he failed to file an appeal after Defendant requested that he do so.

The issue of counsel's duty and obligation with respect to his client's right to appeal has been well litigated.  The Supreme Court has unequivocally stated that if a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable.  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (citing Rodriguez v. United States, 395 U.S. 327 (1969); Peguero v. United States, 526 U.S. 23, 28 (1999)).  Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the defendant is entitled to a belated appeal.  Id. at 483; Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005);  Cunningham v. United States, 378 F. App'x 955, 957 (11th Cir. 2010).

However, in cases where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, counsel's performance can still be constitutionally deficient if counsel failed in his or her duty to consult with the defendant regarding an appeal.  Flores-Ortega, 528 U.S. at 478.  Consultation involves "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  Id.   If counsel has consulted with the defendant, of course, the question of deficient performance is easily answered; counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.  Id.  In this case,

consultation was not specifically raised as an issue in Defendant's motion.[6]  Rather,

Defendant asserts that he expressly instructed counsel to file an appeal and counsel did

not follow this instruction.

<u>The Written Record</u>

Defendant has filed two affidavits to support his claim (*see* doc. 32-2 at 1–2; doc.

41 at 7–8).  In the second of these, Defendant asserts that on the day of sentencing, he

told his attorney, Richard H. Smith (Mr. Smith), that he wanted to appeal, although he

did not intend for Mr. Smith himself to pursue the appeal because of a lack of funds

(doc. 41 at 7).  Defendant explains that he believed that Mr. Smith had filed the notice of

appeal for him, in part because he never received any further correspondence from

counsel, and he recalled that the court recommended counsel write to "confirm [the

decision not to appeal] to avoid any misunderstanding and bring home to [Defendant]

the importance of the decision he's made" (*see* doc. 28 at 33; doc. 32-2 at 1–2; doc. 41

at 7).[7]  Defendant states that he learned that Mr. Smith had not filed a notice of appeal

on or before October 9, 2013, when he called counsel's office to obtain a copy of his

records (doc. 41 at 7).  Defendant indicates that there were no witnesses to this phone

call or any other communication between him and his attorney (*id.*).

---

[6]As will be discussed further below, Mr. Akbar, the lawyer who represented
Defendant at the evidentiary hearing raised the issue in his supplemental memorandum in
support of Defendant's ineffective assistance of counsel claim.  (Doc. 47).

[7]Of course, having requested that counsel file a notice of appeal, there was no
reason for the letter in question to have been forthcoming.

Although not dispositive of Defendant's knowledge regarding the appeal, the court notes that it was shortly after this conversation, on October 24, 2013, that Defendant mailed to the court a "Motion to Extend the Sentence Date to Take a Direct Appeal" (doc. 25).  In so moving, Defendant stated "[t]he rationale is that the issues to be raised would be properly raised on direct appeal rather than on a subsequent motion pursuant to § 2255" (*id.*).  Defendant's motion was only three sentences in length and suggested neither the reason that a timely appeal had not previously been filed nor the issues that Defendant wanted to pursue on appeal.  In denying his motion, the district court noted that Defendant had alleged no adequate basis for extending the appeal deadline, but that even if the court had the discretion to grant the requested relief, it would exercise the discretion not to do so (doc. 29 at 2).

In response to Defendant's assertion that counsel failed to file an appeal as instructed, the Government submitted the affidavit of Defendant's former attorney, Mr. Smith.  Mr. Smith states that he discussed whether Defendant wanted to pursue an appeal after his sentencing and that Defendant concurred with counsel that there was no reason to appeal.  Mr. Smith indicates in his affidavit that he has notes in his file reflecting the conversation, although he does not mention any correspondence such as the letter suggested by the court (doc. 39-1 at 1).  Mr. Smith also notes that "some months after sentencing," Defendant contacted him to request a copy of his file.  When Mr. Smith told Defendant that it was too late to take an appeal, Defendant said that he was "doing something else" (doc. 39-1 at 2).

<u>The Evidentiary Hearing</u>

Defendant testified at the hearing that his attorney, Mr. Smith, had consulted with him three or four times about his case, but that none of these consultations occurred after sentencing.  When asked whether he and his attorney discussed an appeal, Defendant stated that he told Mr. Smith he knew that there was no reason to appeal his conviction, but that he wanted to "keep his options open" with respect to appealing his sentence.  Defendant said that Mr. Smith responded "ok," and that was it.  As a result, Defendant's understanding was that his lawyer would file the notice of appeal, "which would give him a year to file an appeal."  Defendant later explained that he was under the impression that once the notice of appeal was filed, the appellant had a year from that date to file briefs, and to explain "the reasons for the appeal."

Defendant testified that he recalled Judge Hinkle's words to his attorney at sentencing, in which the court recommended that, if Defendant chose not to appeal, counsel memorialize this decision in writing.  Defendant stated, consistent with his previously filed affidavit, that he never received any correspondence from counsel after sentencing, and as such, he assumed that counsel had filed the notice, as requested. Defendant's exhibit 1A was a copy of an inmate request form confirming that he had received no legal mail between May 28 and June 11, 2013.

Defendant testified that at the time of sentencing he was experiencing a lot of emotions.  He said that he was happy that his sentence did not fall within the eighteen to twenty year range that the prosecutor wanted, but he thought that both the nine year term of incarceration and the lifetime term of supervised release were excessive. Defendant indicated unequivocally that he would have pursued the appeal had the

notice been properly filed, and explained that he would have raised the issues he now raises in his § 2255 motion.

Defendant recalled that after sentencing it took him some time to arrive at his final designation. Upon his arrival, he wanted to obtain the transcripts from his court proceedings because he could not remember everything that had transpired at sentencing.  Defendant said that after he learned how much it would cost to procure the transcripts, he contacted counsel to try to get copies from him.  Defendant testified that he also tried to get back the extra funds his parents had paid to his attorney, since he did not intend that Mr. Smith would work on his appeal.

On cross-examination, the Assistant U.S. Attorney began by asking Defendant his age, a question to which Defendant appeared to have significant difficulty in responding.  Defendant regained his composure and testified in response to the Government's questions that he has a degree from Tallahassee Community College, that he had held IT support positions for over ten years, and that he has had no drug or alcohol problems.  Defendant admitted that he had read the written plea agreement, and that he knew at the time of sentencing that the agreement identified the applicable sentencing range as 5–20 years and it also expressly specified that no one could predict the sentence because of the variety and complexity of the factors that are taken into consideration in determining a sentence.

The Government asked Defendant about the court's statement at sentencing that the clerk could file a notice of appeal in his behalf.  Defendant admitted that he did not

ask counsel to ask clerk to file the notice of appeal, explaining that he did not ask the clerk to do it because he "did not know how."

Defendant stated that his wife and parents visited him while he was being held at the federal detention center before his transfer, but he indicated that there was no discussion of an appeal during these visits.

The Government directed Defendant's attention to his motion to extend the time for filing an appeal.  The Assistant U.S. Attorney asked to which issues Defendant was referring in his motion when he indicated that there were issues that he thought would be better brought on appeal rather than via a 2255 motion.  Defendant indicated that he did not believe the court had jurisdiction to sentence him, or increase his sentence, on guidelines factors that were not listed in the indictment such as the number of photos, the presence of images portraying sadistic or masochistic conduct, and the use of computer.  Basically, Defendant indicated that he would have wanted to appeal the issues he raised in his amended 2255 motion.

When asked whether he had expressed anything in writing during the time that would have indicated that he expressed the desire to appeal, Defendant responded that he had not, because he assumed that counsel had filed the notice of appeal.  When asked if there were any individuals to whom he had expressed his desire to appeal, Defendant responded in the negative and stated that he had not discussed the issue with his wife, parents or anyone else.

On redirect, Defendant testified that neither his education nor his employment history have anything to do with the legal field, and he had not learned anything about

federal appeals at all.  Defendant also reiterated that he relied on the conversation he had with his attorney to support his belief that an appeal was filed.

The court then posed several questions of Defendant.  It asked Defendant to clarify his fourth ground for relief in his amended § 2255 motion, where Defendant stated in part that "Petitioner requested that his attorney file the Appeal for a direct appeal and he had the funds in which to do so."  Defendant explained that counsel had money left over from the money Defendant's parents paid for counsel's representation of him, and that he meant that these funds would cover the cost of filing what Defendant referred to as the "14 day notice," i.e., the notice of appeal.  Defendant did not mean that counsel had funds to pursue the entire appeal.  The court also inquired about Defendant's affidavit, in which he stated that he told counsel to file an appeal, but that he did not want counsel to actually do the appeal because of a lack of funds.  (Doc. 41 at 7).  Defendant clarified that he did not want counsel to file the appellate brief because Defendant did not have the money to pay counsel to do it, but that Defendant himself planned to prepare and submit the brief himself within the one year in which he believed he was permitted to do so.

The court noted that Defendant did not mention in his motion to extend the sentence date to file appeal (doc. 25) that Mr. Smith had not filed a notice of appeal as requested.  Defendant stated that he did not know that Mr. Smith had not filed the appeal until the court denied the motion and stated in its order that no appeal had been

filed (doc. 29).[8]  The court inquired about the statement in Defendant's affidavit that "on

or before October 9, 2013, Appellant called Mr. Smith to get his records to do a more in

depth search for Appeal.  It was during this phone call when he found out Mr. Smith did

not file the required Notice to Appeal."  Defendant explained that after he got the court's

order he mentally "went back to the conversation" he had with counsel and realized "oh

that is what he meant" when counsel told Defendant that he had to do "something,"

although Defendant could not remember exactly what counsel said, about a 2255.

Defendant clarified, apologetically, that his statement in the affidavit was a slight

misstatement.  Essentially, in October, Defendant's believed that the "14 day notice"

had been filed and he was the one who had to file the appellate brief.

     The Court next inquired whether Defendant recalled that the court told him at

sentencing that if he could not afford counsel for an appeal that an attorney would be

appointed for him.  Defendant replied that he did not remember but that he is sure he

reread the transcript in October when he obtained it.  Despite his lack of legal training,

Defendant said that he intended to prepare the briefs, and he never considered asking

the court to appoint a lawyer for him.   Defendant explained, somewhat hesitantly, that

because, in his opinion, the lawyer he had paid for did not do a good job, he did not

think that a court-appointed lawyer would be any better.  Defendant admitted that he

could be mistaken in this regard, and stated that his current court-appointed lawyer,

---

[8]Defendant did not explain why he filed the motion if he believed that an appeal was
pending.

Mr. Akbar, had been wonderful.  Defendant said that his experience at trial with the

prosecutor and his own attorney made him believe he could not trust lawyers.

The Government called Mr. Smith as its lone witness.  Mr. Smith testified that he

has been a member of The Florida Bar for 22 years, and that criminal law comprises

95% of his practice.  Mr. Smith testified that he was retained when Defendant had state

charges pending against him based on the same offense conduct, and that he

continued as counsel of record for Defendant through the federal sentencing.

Mr. Smith recalled that he and his client discussed sentencing possibilities only in broad

terms because there can be no certainty about the sentencing range until the guidelines

are calculated.  Mr. Smith said unequivocally that his client was aware that he faced a 5

to 20 year term of imprisonment, as set forth in the plea agreement.  Mr. Smith also

recalled that the applicable guidelines range was calculated at between ten and twelve

years, and that there was a downward departure from this range.

Mr. Smith admitted that he had only a sketchy recollection of his conversation

with his client about an appeal, although he had had the opportunity to think about it

since learning of Defendant's § 2255 motion.  Mr. Smith stated that after sentencing,

there was nothing left to appeal.  Mr. Smith noted that as he does in every case, after

the court advises the defendant about his appellate rights, he turns to his client and

asks if he wants to appeal.  In this case, Mr. Smith says that Defendant said no, and

that he has notes to that effect.  Counsel testified that the notes he took at sentencing

were written on the back of Defendant's PSR, rather than on a separate legal pad.   The

notes in question were introduced into evidence at the hearing.  At the bottom right of

the single sheet of notes, Mr. Smith had written the words "Appeal?" "Clerk?" and "Asked by Court." Directly below that, counsel wrote the word "No." Mr. Smith testified that he interpreted that as meaning that after he asked Defendant whether he wanted to appeal, Defendant said no.

Mr. Smith recalled that after sentencing, Defendant called counsel to get a copy of the discovery in his case, which counsel provided to him. Mr. Smith testified that he reminded Defendant that the time for pursuing an appeal had long since passed. Defendant responded with words to the effect of "I know that, I'm working on something else," which counsel took to mean new case law. Mr. Smith testified that appellate work is not a regular part of his practice, and that he refers appeals to other practitioners. When he has had clients who wanted to appeal, he has filed the preliminary documents then moved to withdraw. Mr. Smith stated that there is no reason why he would not have done that in this case if Defendant had expressed an interest in an appeal, because it is a simple process.

On cross examination, Mr. Smith said that Judge Hinkle "probably" made a suggestion that counsel write a letter to his client memorializing the decision with respect to an appeal. Mr. Smith did not offer an explanation as to why he did not follow the court's suggestion, but admitted that there was no letter, because if there had been one it would have been in Defendant's case file.

Mr. Smith testified that the notes to which he referred were prepared "during" sentencing, and he neither testified nor suggested that there had been any post-sentencing discussion regarding an appeal. With respect to the merits of filing an

appeal in Defendant's case, Mr. Smith offered the opinion that there were no meritorious grounds for an appeal in light of the fact that the number of images attributed to Defendant was whittled down and there was a downward departure from the applicable guidelines range.  Mr. Smith also noted that if Defendant's case had proceeded in state court, Defendant's sentence would have been far more severe under the state sentencing guidelines, and that he could have been sentenced to twenty, thirty or even forty years.  Therefore, counsel opined that in some ways Defendant's federal indictment was a "blessing" because Defendant received a significantly lower sentence than he would have under state law.

On re-direct, Mr. Smith reiterated that there was no basis for Defendant to contest his guilt, and no reason to appeal his sentence in light of the fact that Judge Hinkle "went out of his way" to make a downward departure in this case.  Mr. Smith also stated that the word "no" is the last word in his notes and that this was written after Defendant said that he did not want to file an appeal.

<u>Findings of Fact</u>

The court has carefully considered the testimony presented at the evidentiary hearing and reviewed the entire record in this case, including the post-hearing memoranda filed by the parties.  After doing so, the undersigned concludes that, although the case presents a close question, relief is warranted on Defendant's claim.

The court credits Defendant's testimony regarding his request of counsel and his belief that a notice of appeal had been filed.  Defendant had no prior criminal history other than state charges related to the offense conduct in this case and thus he did not

have any other experience with the criminal justice system.  Defendant was an

unsophisticated witness, and based on the court's observation of Defendant's

demeanor during his testimony at the evidentiary hearing, it is not difficult to believe that

Defendant could have been flustered or confused at the time of sentencing.

Nonetheless, there was nothing about Defendant's demeanor or his responses to the

questions posed suggesting that Defendant fabricated his claim that he had requested

Mr. Smith to file an appeal.[9]  The court further finds that, despite Defendant's obvious

confusion, his actions were not inconsistent with someone who thought that after a

notice of appeal had been filed, he had a year to file briefs.

Mr. Smith is a seasoned criminal defense attorney.  Despite this experience and

the district court's explicit suggestion, he did not write a letter confirming any discussion

with his client about an appeal.  Mr. Smith likewise offered no notes from Defendant's

case file that might have indicated his client's intent with respect to pursuing an appeal.

Absent same, the court is not persuaded by counsel's explanation for the word "no"

handwritten on notes that counsel testified he took <u>during</u> the sentencing hearing.[10]  The

---

[9]Whether a statement that Defendant "wanted to keep his options open" with respect to an appeal of his sentence is the best way to request that counsel file a notice of appeal is not at issue here.  The only way to keep Defendant's options open would have been to perform the ministerial act of filing a notice of appeal, which later could have been withdrawn, if Defendant, after further consultation with his attorney later decided this was not the best course of action in this case.

[10]In declining to afford credibility to at least this portion of counsel's testimony, the court has taken into account that at the time of the hearing counsel had had very little sleep and was likely somewhat distracted by a family member's serious health issues.

lack of meritorious grounds for appeal, as argued by the Government, does not excuse

such an omission.

In sum, the court finds Defendant believed that he asked counsel to file an

appeal, and the Government has not provided persuasive evidence that he did not.

Whether through inadvertence or as a result of miscommunication between seasoned

counsel and an unsophisticated client, the notice of appeal was not filed.

The court also notes that although Defendant's claim was not that counsel failed

to consult with him regarding an appeal, from counsel's testimony regarding the timing

of his question to his client regarding the appeal, it does not appear that any meaningful

post-sentencing "consultation" took place.  Based on the record before the court, if

Defendant's claim were to be construed as including a claim that counsel was

constitutionally ineffective for his failure to adequately consult with Defendant about an

appeal, his position would be even stronger.

Therefore, regardless of whether an appeal would have been successful, or

whether Defendant would have chosen to file an appeal after a meaningful consultation

with counsel, Defendant is entitled to relief with respect to Ground Four of his § 2255

motion.

<u>Defendant's Remedy</u>

The proper procedure when an out of time appeal is warranted is:  (1) the

criminal judgment from which the out-of-time appeal is to be permitted should be

vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of that

sentence, the defendant should be advised of all the rights associated with an appeal

from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is fourteen days, which is dictated by Federal Rule of Appellate Procedure 4(b)(1)(A)(I).  <u>United States v. Phillips</u>, 225 F.3d 1198, 1201 (11th Cir. 2000); <u>United States v. Parrish</u>, 427 F.3d 1345, 1347 (11th Cir. 2005); <u>United States v. Palacios</u>, 516 F. App'x 734 (11th Cir. 2013). Appointment of counsel will presumably also be warranted given Defendant's custodial status.

Defendant's remaining claims should be dismissed without prejudice to their reassertion, if appropriate, upon conclusion of his direct appeal.  *See* <u>McIver v. United States</u>, 307 F.3d 1327, 1331 n.2 (11th Cir. 2002).  An order granting a § 2255 petition, and reimposing sentence, will reset to zero the counter of collateral attacks pursued and will not render subsequent collateral proceedings "second or successive."  <u>McIver</u>, 307 F.3d at 1332 (quoting <u>Shepeck v. United States</u>, 150 F.3d 800, 801 (7th Cir. 1998)).

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  Defendant's amended motion to vacate, set aside, or correct sentence (doc. 32) be **GRANTED** with respect to Ground Four of his motion, and that the remaining claims be **DISMISSED without prejudice**.

2. Defendant's criminal judgment be vacated and the same sentence reimposed.

3. Counsel be appointed for the purpose of appeal (or at minimum to consult with Defendant with respect to his desire to appeal).

At Tallahassee, Florida, this 22nd day of December, 2014.


/s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).